## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                                         :
RARITAN BAYKEEPER, INC. (d/b/a NY/NJ                     :   Case No. 18-cv-2619
Baykeeper),                                              :
                                                         :   **COMPLAINT FOR**
                    Plaintiff,                           :   **DECLARATORY AND**
                                                         :   **INJUNCTIVE RELIEF AND**
      v.                                                 :   **CIVIL PENALTIES**
                                                         :
QUEENS READY MIX INC.,                                   :   (Federal Water Pollution Control
                                                         :   Act, 33 U.S.C. §§ 1251 to 1387)
                    Defendant.                           :
                                                         :
-------------------------------------------------------- X


Plaintiff Raritan Baykeeper, Inc. (d/b/a NY/NJ Baykeeper) by and through its counsel,

hereby alleges:

## I.

## INTRODUCTION

1.      This is a civil suit brought under the citizen suit enforcement provisions of the

Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* (the "Clean Water Act," "the

Act," or "CWA") to address and abate Defendant's ongoing and continuous violations of the

Act.

2.      Defendant discharges polluted stormwater runoff from its industrial site at 149-01

95th Ave, Jamaica, New York, 11435 (Block 10000, Lot 31) (the "Facility") into waters of the

United States without a permit, in violation of Sections 301(a) and 402(p)(2)(B) of the CWA, 33

U.S.C. §§ 1311(a) and 1342(p)(2)(B), and have failed to obtain coverage under and comply with

the conditions of an individual National Pollutant Discharge Elimination System ("NPDES")

1

permit or the State of New York, General Permit for the Discharge of Stormwater Associated with Industrial Activity ("the General Permit") issued by the New York State Department of Environmental Conservation ("DEC"), in violation of Sections 402(p)(3)(A) and (p)(4)(A) of the CWA, 33 U.S.C. §§ 1342(p)(3)(A) and (p)(4)(A), and 40 C.F.R. §§ 122.26(c)(1) and (e)(1).

3.      Stormwater runoff is one of the most significant sources of water pollution in the nation, comparable to, if not greater than, contamination from industrial and sewage sources. With every rainfall event, hundreds of millions of gallons of polluted rainwater pour into the New York Harbor, Long Island Sound, Jamaica Bay, and other receiving waters in this District. The State of New York has designated more than 6,676 river miles, 317,000 acres of larger waterbodies, 560 square miles of harbors, bays and estuaries, 778 acres of wetland, and 592 miles of Great Lakes shoreline in the State as "impaired," or not meeting water quality standards, and unable to support beneficial uses such as fish habitat and water contact recreation.  In many of these waters, state water quality standards for metals, oil and grease, nutrient enrichment and oxygen depletion, inorganic pollutants, pathogens, taste, color, odor, and other parameters are consistently exceeded.  For the overwhelming majority of water bodies listed as impaired, stormwater runoff is cited as a primary source of the pollutants causing the impairment.

4.      Defendant's stormwater discharges contribute to this endemic stormwater pollution problem.  Defendant's industrial activity includes the purchase, collection, cutting, and outdoor storage of sand, aggregate, stone, Portland cement, and other substances used in manufacturing, loading, and delivering ready mix concrete.  The Facility also houses a ready mix concrete plant, truck washing equipment, and piles of raw material.  All of these are potential sources of industrial pollutants.  Defendant mixes raw materials into concrete on site, transfers the concrete to trucks, washes out trucks at the facility, and stores a variety of finished concrete

products, other building materials, and open containers on site, exposed to stormwater.  As

precipitation comes into contact with pollutants generated by these industrial activities, it

conveys those pollutants to nearby surface waters.  The stormwater discharged into Jamaica Bay

via municipal separate storm sewer system ("MS4") can transport solids that suspend or dissolve in

water, heavy metals, pH affecting substances, and other pollutants.  Contaminated stormwater

discharges such as those from the Facility can and must be controlled to the fullest extent

required by law in order to allow these water bodies a fighting chance to regain their health.

## II.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the parties and this action pursuant

to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331 (an action arising

under the laws of the United States).

6.      Plaintiff has complied with the notice requirements under Section 505(b)(1) of the

CWA, 33 U.S.C. § 1365(b)(1).

7.      On March 1, 2018, Plaintiff provided notice of Defendant's violations of the Act

and of their intention to file suit against Defendant; the Administrator of the United States

Environmental Protection Agency ("EPA"); the Administrator of EPA Region II; and the

Commissioner of DEC, as required by the Act, 33 U.S.C. § 1365(b)(1)(A), and the

corresponding regulations at 40 C.F.R. §§ 135.1 to 135.3.  A true and correct copy of Plaintiff's

notice letter is attached as Exhibit A and is incorporated by reference.

8.      More than sixty days have passed since the notice letter was served on Defendant

and the state and federal agencies.

9.      Neither the EPA nor the State of New York has commenced or is diligently

prosecuting a civil or criminal action to redress the violations alleged in this complaint.  *See*

CWA § 505(b)(1)(B), 33 U.S.C. § 1365(b)(1)(B).

10.    This action is not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

11.    Venue is proper in the Eastern District of New York pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b)(2) because the source of the violations complained of is located, and the acts and omissions giving rise to the claims occurred, within this judicial district.

## III.

## PARTIES

12.    Plaintiff Raritan Baykeeper, Inc. (d/b/a NY/NJ Baykeeper) ("Baykeeper"), is a non-profit public interest 501(c)(3) corporation, whose mission is to protect, preserve, and restore the ecological integrity and productivity of the Hudson-Raritan Estuary through enforcement, field work and community action.  Baykeeper has approximately 350 members in the New York and New Jersey region, many of whom use and enjoy New York Harbor and its tributaries, including Jamaica Bay, which are polluted by industrial stormwater runoff from the Defendant's Facility.

13.    Plaintiff's members use and enjoy the waters which Defendant has unlawfully polluted and is unlawfully polluting.  Plaintiff's members use those areas to fish, sail, boat, kayak, swim, birdwatch, photograph, view wildlife and engage in nature study and scientific study, among other activities.  Defendant's discharges of stormwater associated with industrial activity containing pollutants impair each of those uses.  Thus, the interests of Plaintiff's members have been, are being, and will continue to be, adversely affected by Defendant's failure to comply with the CWA.

14.     The relief sought herein will redress the harms to Plaintiff and its members caused by Defendant's activities.  Continuing commission of the acts and omissions alleged herein will irreparably harm Plaintiff and its members, for which harm they have no plain, speedy or adequate remedy at law.

15.     Plaintiff is informed and believes, and thereupon alleges, that Defendant Queens Ready Mix Inc., ("Queens Ready-Mix") is a business corporation incorporated under the laws of the State of New York, which owns and operates a ready mix concrete facility at 149-01 95th Ave, Jamaica, New York, 11435 (Block 10000, Lot 31).

## IV.

## STATUTORY AND REGULATORY BACKGROUND

### The Clean Water Act

16.     Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  CWA § 101(a), 33 U.S.C. § 1251(a).  In furtherance of this goal, the Act provides a comprehensive approach for the regulation of pollution discharged into the waters of the United States.

17.     The CWA prohibits the discharge of pollutants from a "point source" into the waters of the United States without a NPDES permit.  A NPDES permit requires dischargers of pollution to comply with various limitations.

18.     NPDES permits are issued by EPA or by States that have been authorized by EPA to act as NPDES permitting authorities, provided that the state permitting program ensures compliance with the procedural and substantive requirements of the CWA.  *See* 33 U.S.C. § 1342(b)(1); 40 C.F.R. § 123.25(a).

19.     In New York, DEC has been delegated the authority to issue NPDES permits.

## Stormwater Permits

20.     In 1987, to better regulate pollution conveyed by stormwater runoff, Congress enacted Clean Water Act § 402(p), 33 U.S.C. § 1342(p), entitled "Municipal and Industrial Stormwater Discharges."

21.     Pursuant to Section 402(p), 33 U.S.C. § 1342(p), EPA promulgated stormwater discharge regulations at 40 C.F.R. § 122.26.

22.     In promulgating those regulations, EPA cited abundant data showing the harmful effects of stormwater runoff on rivers, streams and coastal areas across the nation.  In particular, EPA found that runoff from industrial facilities contained elevated pollution levels and that, on an annual basis, pollutant levels in stormwater runoff can exceed by an order of magnitude the levels discharged by municipal sewage treatment plants.  55 Fed. Reg. 47990, 47991 (Nov. 16, 1990).

23.     Sections 402(p) of the Act and EPA's implementing regulations at 40 C.F.R. § 122.26 require NPDES permits for stormwater discharges "associated with industrial activity."

24.     40 C.F.R. § 122.26(c)(1) provides that dischargers of stormwater associated with industrial activity must apply for an individual permit, apply for a permit through a group application, or seek coverage under a general permit.

25.     40 C.F.R, § 122.26(b)(13) defines "storm water" to include stormwater runoff, snow melt runoff, and surface runoff and drainage.

26.     40 C.F.R. § 122.26(b)(14) specifies that "storm water discharge associated with industrial activity" includes stormwater discharge from facilities classified under Standard Industrial Classification ("SIC") code 4212 (local trucking without storage). Facilities in that industrial category must obtain NPDES permit coverage for their stormwater discharges.

## New York's General Permit for the Discharge of Stormwater Associated with Industrial Activity

27.    As a delegated state NPDES permitting agency, DEC has elected to issue a statewide general permit for industrial stormwater discharges in New York.  The current version of the "Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity," Permit No. GP-0-17-004 (the "General Permit") came into effect on March 1, 2018.[1]

28.    In order to discharge polluted stormwater lawfully in New York, industrial dischargers must obtain coverage under the General Permit and comply with its terms or obtain coverage under and comply with an individual NPDES permit.

29.    To obtain coverage under the General Permit, a facility discharging stormwater associated with industrial activity is required to submit to DEC a registration form called a "Notice of Intent" to be covered under the General Permit.

30.    Also, in order to comply with the General Permit, a facility owner or operator must reduce the discharge of pollution from the facility to the extent practicable through use of the best available technology.  The owner or operator also must comply with numeric effluent limitations on the quantity and concentration of pollutants discharged from the facility established in the General Permit, as well as narrative ("non-numeric") effluent limits established in the General Permit.  Facility owners and operators reduce pollution and comply with effluent limitations both by adopting "best management practices" that reduce the discharge of polluted stormwater.  Best management practices include both changes to industrial practices and activities (for example, more frequent inspections and site clean ups) and concrete, structural changes to the property that prevent stormwater from coming into contact with pollutants in the

_____

[1] This General Permit replaces earlier general permits for discharges of stormwater associated with industrial activity, most recently Permit No. GP-0-12-001.

first place and that otherwise reduce the amount of polluted stormwater eventually discharged from the facility.  In addition, the owner or operator must perform inspections, conduct monitoring and sampling, and meet other requirements of the General Permit.

31.    Before submitting a registration form to DEC, a facility discharging stormwater associated with industrial activity must first prepare, make available, and implement a Storm Water Pollution Prevention Plan ("SWPPP").  Among other things, the SWPPP must document the best management practices that the facility has implemented to ensure that it is reducing the discharge of pollution from the facility to the extent practicable through use of the best available technology for the industry.

### CWA Citizen Enforcement Suits

32.    Under CWA § 505(a)(1), any citizen may commence a civil action in federal court on his own behalf against any person who is alleged to be in violation of an "effluent standard or limitation" under the CWA.  33 U.S.C. § 1365(a)(1).

33.    Such enforcement action under CWA§ 505(a), 33 U.S.C. § 1365(a), includes an action seeking remedies for an unpermitted discharge in violation of Section 301 of the CWA, 33 U.S.C § 1311, as well as for violation of a condition of a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.  *See* CWA § 505(f), 33 U.S.C. § 1365(f).

34.    Declaratory relief in such cases is authorized by 28 U.S.C. § 2201–02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration).

35.    Injunctive relief is authorized by Section 505(a) of the Act, 33 U.S.C. § 1365(a).

36.    Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day per violation for violation occurring after January 12, 2009, and $52, 414 per

day per violation for all violations of the Act occurring after November 2, 2015. *See* 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1–19.4.

## V.

## STATEMENT OF FACTS

### Defendant Controls Industrial Activities at the Facility

37.     On information and belief, Defendant operates a concrete ready-mix facility at facility located at 149-01 95th Ave, Jamaica, New York, 11435 (Block 10000, Lot 31).

38.     There is signage at the entrance to the Facility bearing the name "Queens Ready Mix."

39.     Because Defendant controls the industrial activities that take place at the Facility, the Defendant is responsible for managing stormwater at the Facility associated with those activities in compliance with the CWA.

40.     The Defendant is the person, as defined by 33 U.S.C. § 1362(5), responsible for the violations alleged in this Complaint.

### Industrial Activities at Defendant's Facility Expose Pollutants to Stormwater

41.     The activities and practices of Defendant at the Facility exposes materials and pollutants to stormwater.

42.     The Facility houses a ready-mix concrete plant, truck washing equipment, a fleet of trucks, material piles, and other industrial equipment.

43.     The equipment, vehicles, and materials at the Facility are all potential sources of industrial pollutants, including aggregate, sand, gravel, Portland cement, cement additives, minerals and waste materials reused in concrete manufacture such as shale, clay, limestone, slate, slag, pumice, fly ash, and baghouse settled dust.

44.    If specialty concretes or cast/formed products are demanded by a customer, the Facility may also house form release agents, latex sealants, and bitumastic coatings.

45.    Machinery at the Facility also can release into the environment fuel, oil, lubricants, PCBs, polycyclic aromatic hydrocarbons (PAHs), an array of metals, pH-affecting substances and chemical residues.

46.    On information and belief, active vehicles at the Facility also release pollutants to the environment, including gasoline, diesel fuel, anti-freeze, and hydraulic fluids.

47.    Further, vehicles at the Facility track dust, particulate matter, and other contaminants to areas on and off the premises from which these pollutants can enter stormwater and, ultimately, waters of the United States.

48.    Defendant fails to adequately shelter and otherwise contain these materials to prevent their exposure to precipitation.  Stormwater transports wastes including but not limited to sand, aggregate, cement, cement additives, minerals, waste materials, fluids from vehicles and machinery, lead, iron, zinc, oil and grease, materials that generate Chemical Oxygen Demand, and pH altering pollutants.

**Defendant Discharges Stormwater Associated with Industrial Activity From the Facility to Waters of the United States**

49.    With every rain storm or snow melt, polluted stormwater associated with the industrial activity described above discharges from the Facility into the municipal separate storm sewer system (MS4) and then into Jamaica Bay.

50.    The Facility is located in a portion of Queens where all of the stormwaters flows into the MS4 system and is eventually discharged into Jamaica Bay.

51.    Baykeeper has observed and documented evidence of the release of polluted stormwater associated with industrial activity from the Facility into the MS4 system, which

eventually discharges into Jamaica Bay, a water of the United States.

### Defendant has not Obtained Permit Coverage for These Discharges

52.    Upon information and belief, the Facility is not covered by an individual NPDES permit.

53.    Upon information and belief, the Facility is not covered by the General Permit.

54.    Upon information and belief, Defendant has not complied with any provisions of the General Permit.

55.    Accordingly, on March 1, 2018, Plaintiff sent Defendant via certified mail the notice of intent to sue described above and attached to this complaint as Exhibit A.

56.    Defendant's violations of the CWA at the Facility are ongoing and continuous, are capable of repetition, and result from the same underlying and inadequately resolved causes.

### VI.

### CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### Unlawful Discharge of Pollutants
### (Violations of 33 U.S.C. §§ 1311, 1342)

57.    Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

58.    Section 301(a) of the Act, 33 U.S.C. § 1311(a), provides that the "discharge of any pollutant" by any "person" is unlawful, unless the discharge complies with various enumerated sections of the CWA.  Among other things, Section 301(a) prohibits discharges not authorized by a valid NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

59.    Section 502(5) of the CWA, 33 U.S.C. § 1362(5), defines "person" to include "an

individual, corporation, partnership [or] association."

60.     Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

61.     Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include, among other things, industrial wastes, chemical wastes, biological materials, rocks, sand, and garbage discharged into water.

62.     Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" broadly to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

63.     Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

64.     40 C.F.R. § 122.2 defines "waters of the United States" to include, among other things:  (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; (ii) all interstate waters; (iii) tributaries to such waters; (iv) wetlands adjacent to such waters or their tributaries; and (v) all other waters the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce.

65.     Section 402(p) of the CWA, 33 U.S.C. § 1342(p) and the implementing regulation found at 40 C.F.R. § 122.26(a)(1)(i) require that facilities discharging stormwater associated with industrial activity obtain a NPDES permit.

66.     Defendant has discharged and continues to discharge stormwater associated with industrial activity that contains pollutants from point sources to waters of the United States without a

NPDES permit.

67.     Each and every day on which Defendant discharges stormwater associated with industrial activity without authorization under a NPDES permit is a separate and distinct violation of Section 301(a) and Section 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

68.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

69.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

### Failure to Apply for NPDES Permit Coverage
### (Violations of 33 U.S.C. §§ 1311, 1342)

70.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

71.     40 C.F.R. § 122.26(c)(1) and 122.26(e)(1) require dischargers of stormwater associated with industrial activity to apply for an individual permit or seek coverage under a promulgated stormwater general permit by October 1, 1992.

72.     For the last year, and likely longer, Defendant has operated and continues to operate a facility that engages in ''industrial activity'' as that term is defined in 40 C.F.R. § 122.26(b)(14).

73.     Defendant has routinely discharged polluted stormwater associated with industrial activity from the Facility to waters of the United States.

74.     Therefore, for the last five years, Defendant has been obligated to apply for coverage under an individual or general NPDES permit.

75.     Once Defendant began discharging polluted stormwater associated with industrial activity to waters of the United States, each and every subsequent day on which Defendant has

failed to apply for permit coverage constitutes a separate and distinct violation of Section 301(a) and Section 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

76.    Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

77.    Wherefore, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION

**Failure to Implement Adequate Control
Measures and Best Management Practices
(Violations of 33 U.S.C. §§ 1311, 1342)**

78.    Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

79.    The General Permit, in Parts II.A and VII, requires that Defendant implements mandatory general and sector-specific control measures called Best Management Practices ("BMPs") in order to minimize the discharge of pollutants from the Facility.

80.    The selected measures must reduce the discharge of pollution from the Facility to the extent practicable through use of the best available technology for the industry in order to comply with both numeric and narrative effluent limits contained in the permit.

81.    Because the industrial activities carried out at the Facility are categorized in SIC Code 3273, Defendant must also implement the sector-specific control measures specified in Part VII of the General Permit for Sector E.

82.    Plaintiff is informed and believe, and thereupon allege that, as of the filing date of this complaint, Defendant has not implemented adequate control measures or BMPs required by the General Permit.

83.     Defendant has failed, and continues to fail, to implement adequate control measures and BMPs at the Facility as required by the General Permit.

84.     Defendant's ongoing failure to implement adequate control measures and BMPs at the Facility as required by the General Permit is evidenced by, *inter alia*, Defendant's outdoor storage of raw materials, including aggregate, without appropriate best management practices and in close proximity to MS4 drains; parking and washing out trucks in close proximity to, and in locations where discharge from the trucks reaches, MS4 drains that connect to Jamaica Bay; the continued exposure and tracking of waste resulting from the operation or maintenance of vehicles at the site, including trucks; and the failure to implement effective containment practices on other parts of the Facility.

85.     Each and every day on which Defendant fails to comply with the General Permit's control measure and BMP requirements is a separate and distinct violation of Section 301(a) and Section 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

86.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

87.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION

**Failure to Develop and Implement an Adequate
Storm Water Pollution Prevention Plan
(Violations of 33 U.S.C. §§ 1311, 1342)**

88.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

89.     Part III of the General Permit requires industrial dischargers to develop, implement and maintain compliance with a Stormwater Pollution Prevention Plan ("SWPPP").

15

90.     As described in Part III.A of the General Permit, the SWPPP must identify potential sources of pollution that may affect the quality of stormwater discharges associated with industrial activity.

91.     Further, the SWPPP must describe how the discharger has implemented best management practices that minimize the discharge of pollutants in stormwater discharges and that assure compliance with the other terms and conditions of the General Permit, including achievement of effluent limitations.

92.     The SWPPP must address, at a minimum: (1) each of the universally applicable elements; (2) each of the applicable sector-specific plan elements specified in Part VIII of the General Permit and, (3) as applicable, each of the additional special requirements listed in Part III.E of the General Permit for industrial activities that discharge through a municipal separate storm sewer or to impaired waterbodies, activities that take place at facilities that report under the federal Emergency Planning and Community Right to Know Act, and facilities that use secondary containment measures. The SWPPP must include records and documentation of compliance with each of these elements and requirements.

93.     The SWPPP must be representative of current site conditions and kept up to date.

94.     The SWPPP must be signed in accordance with Part III.C of General Permit.

95.     The SWPPP must be kept on-site, at the Facility, at all times.

96.     The SWPPP must be prepared and must provide for compliance with the terms of the General Permit on or before the date of submission of a Notice of Intent to be covered under the General Permit.

97.     Because the industrial activity carried out at the Facility is categorized in SIC Code 3273, Defendant must include the sector-specific SWPPP elements specified in Part VIII of

the General Permit for Sector E, in addition to the SWPPP elements set forth in Part III of the General Permit.

98.     Under Part III.C of the General Permit, the owner or operator of a facility "must make a copy of the SWPPP available to the public within 14 days of receipt of a written request."

99.     Plaintiff requested a copy of Defendant's SWPPP on March 1, 2018.

100.     Defendant has not provided a copy of a SWPPP to Plaintiff.

101.     Plaintiff is informed and believes, and thereupon allege that, as of the filing date of this complaint, Defendant has not developed a SWPPP.

102.     Defendant has failed, and continues to fail, to develop, implement and maintain compliance with an adequate SWPPP for the Facility as required by the General Permit and to take the other SWPPP-related actions required by the General Permit and described herein.

103.     Each and every day on which Defendant fails to comply with the General Permit's SWPPP requirements is a separate and distinct violation of Section 301(a) and Section 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

104.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

105.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION

**Failure to Conduct Routine Site Inspections and Comply With General
Monitoring, Recordkeeping, and Reporting Requirements
(Violations of 33 U.S.C. §§ 1311, 1342)**

106.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

107.    The General Permit requires industrial dischargers to conduct and document comprehensive site inspections at appropriate intervals, but in no event less frequently than once a year.  The inspection must ensure that all stormwater discharges are adequately controlled and that all BMPs are functioning as expected.  Records of this inspection must be kept for five years.  *See* General Permit, Part IV.

108.    In addition, qualified facility personnel must carry out routine inspections at least quarterly.  *See* General Permit, Part IV.E.  During these inspections, personnel must evaluate conditions and maintenance needs of stormwater management devices, detect leaks and ensure the good condition of containers, evaluate the performance of the existing stormwater BMPs described in the SWPPP, and document any deficiencies in the implementation and/or adequacy of the SWPPP.  *See* General Permit, Part IV.E.  Such deficiencies must then be addressed through corrective actions.

109.    And all covered facilities must conduct multiple types of analytical monitoring as described in Part IV.D of the General Permit and must keep records of their monitoring efforts. The monitoring required under the General Permit includes both various visual inspections and collection and laboratory analysis of water quality samples.

110.    In addition, Defendant engages in industrial activities that fall within Sector E of the General Permit's classifications of industrial activity, and therefore must also conduct additional analysis of water quality samples for a range of pollutant parameters as set forth in Part VII of the General Permit.  *See* General Permit, Part VII (requirements for Sector E).  These include:

Total Suspended Solids,

pH,

Total Recoverable Aluminum,

and, Total Recoverable Iron.

111.    Plaintiff is informed and believes, and thereupon allege that, as of the filing date of this complaint, Defendant has not conducted any of the site inspections, monitoring, and testing required by the General Permit.

112.    Defendant has failed, and continues to fail, to comply with the inspection, monitoring, and testing requirements of the General Permit.

113.    Plaintiff is informed and believes, and thereupon allege that, as of the filing date of this complaint, Defendant also has failed to retain records and submit monitoring reports as required by the General Permit.

114.    Each and every day on which Defendant fails to comply with any of the General Permit's inspection, monitoring, testing, recordkeeping and reporting requirements is a separate and distinct violation of Section 301(a) and Section 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

115.    Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

116.    Wherefore, Plaintiff prays for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION

**Failure to Comply with Specific General Permit Requirements Applicable to Ready Mix Concrete Facilities**
**(Violations of 33 U.S.C. §§ 1311, 1342)**

117.    Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

118.    The General Permit contains various requirements specific to transportation and trucking facilities.  *See* General Permit, Part VII (requirements for Sector E).

119.    These include:

(a) A requirement to include in the SWPPP and annual reports to DEC a description of measures that ensure that process wastewater that results from washing of trucks, mixers, transport buckets, forms or other equipment are discharged in accordance with a separate SPDES permit or are recycled.

(b) A requirement to identify in the SWPPP the locations of any baghouse or other dust control device; and any recycle/sedimentation pond, clarifier or other device used for the treatment of process wastewater and the areas that drain to the treatment device.

(c) A requirement that site inspections take place while the Facility is in operation and shall include all of the following areas that are exposed to stormwater:

- Material handling areas

- Aboveground storage tanks

- Hoppers or silos

- Dust collection/containment systems

- Truck wash down/equipment cleaning areas

(d) A requirement to sweep the Facility weekly to prevent or minimize the discharge of cement and aggregate.

(e) A requirement to, if practicable, store cement and any other fine granular solids in enclosed silos or hoppers, buildings, or under other covering.

120.    Defendant has failed, and continues to fail, to comply with the Sector E requirements contained in the General Permit that apply to Ready Mix Concrete facilities.

121.    Each and every day on which Defendant fails to comply with the General Permit's requirements applicable to trucking facilities is a separate and distinct violation of Section 301(a) and Section 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

122.    Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

123.    Wherefore, Plaintiff prays for relief as hereinafter set forth.

**VII.**

**PRAYER FOR RELIEF**

124.    Wherefore, Plaintiff Baykeeper respectfully requests that this Court grant the following relief, as allowed by 33 U.S.C. § 1365(a) and 28 U.S.C. §§ 2201(a) and 2202:

(a)    Declare Defendant to have violated, and to be in violation of, the Act as alleged herein;

(b)    Enjoin Defendant from discharging pollutants from the Facility except as authorized by and in compliance with a NPDES permit;

(c)    Order Defendant to immediately apply for coverage under, and comply fully with, all applicable requirements of the General Permit (or an individual permit that is at least as stringent);

(d)    Order Defendant to take appropriate actions to remediate the harm caused by the violations of its NPDES permit and the CWA, to the extent possible;

(e)    Order Defendant to pay, jointly and severally, civil penalties of $37,500 per day per violation for all violations of the Act occurring between May 3, 2013 and November 2, 2015, and $52, 414 per day per violation for all violations of the Act occurring after November 2, 2015, as provided by Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and by 40 C.F.R. §§ 19.1–19.4;

(f)     Order Defendant to pay the costs of litigation, including Plaintiff's reasonable investigative costs, attorneys', witness, and consultant fees, and other costs, in accordance with Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

(g)     Award any such other and further relief as this Court may deem appropriate.

Dated this 3rd day of May 2018        Respectfully submitted,
New York, New York


                                      By:  s/ Michael DiGiulio

                                      Michael DiGiulio

                                      SUPER LAW GROUP, LLC
                                      180 Maiden Lane, Suite 603
                                      New York, NY 10038

                                      *Attorney for Plaintiff*